UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DAVID GOMEZ,

      Plaintiff,                            **ORDER ADOPTING REPORT**
                                                 **AND RECOMMENDATION**

    -against-

MIDWOOD LUMBER AND MILLWORK, INC. and       17-CV-3064(KAM)(JO)
PINE SASH, DOOR & LUMBER CO., INC.,

      Defendants.
----------------------------------------X
**KIYO A. MATSUMOTO, United States District Judge:**

        On May 22, 2017, plaintiff David Gomez ("plaintiff") commenced this action by filing a complaint ("Compl." or the "complaint," ECF No. 1) against defendants Midwood Lumber and Millwork, Inc. and Pine Sash, Door & Lumber Co., Inc. (collectively, "defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law, and title 12 of the New York Codes, Rules and Regulations. (Compl. ¶ 1.) On September 14, 2017, the parties submitted a letter motion ("Mot." or the "approval motion," ECF No. 17) seeking approval of the parties' settlement agreement ("Settlement Agreement") resolving this action. (*See* Mot. at 1; *see also* Settlement Agreement, ECF No. 17-1.)

        Presently before the court is a report and recommendation ("R&R" or the "Report and Recommendation,") issued on September 20, 2017 by the Honorable James Orenstein, United States Magistrate Judge, recommending that the court

approve the Settlement Agreement.[1]  For the reasons set forth herein, the court adopts and supplements Judge Orenstein's Report and Recommendation and approves the Settlement Agreement.

**<u>Background</u>**

In the complaint, plaintiff alleges, *inter alia*, that defendants, both of which are "engaged in the building material and supply distribution business" (Compl. ¶¶ 8-9), employed him as a truck driver "from approximately July 2016 through February 2017." (*Id.* ¶ 7.) Plaintiff further alleges that from May 2011 onward, defendants "engaged in a policy and practice of requiring [plaintiff] and putative class members to regularly work in excess of forty (40) hours per week, without providing overtime compensation" as required under applicable law.[2] (*Id.* ¶ 2.)

According to the complaint, plaintiff "typically worked a total of approximately 54.5 hours per week." (*Id.* ¶ 25.) Plaintiff's "regular rate of pay was approximately $20.00 per hour," although plaintiff alleges that defendants structured his payments "in an effort to avoid paying . . . overtime at time and one half of [plaintiff's] regular rate of pay and to

---

[1]   The Report and Recommendation was issued as a docket order, and was not assigned a docket number by the ECF system.
[2]   The complaint states that plaintiff seeks recovery for plaintiff and "all similarly situated persons." (Compl. ¶ 1.) Plaintiff, however, never sought certification of the complaint as a collective action pursuant to 29 U.S.C. § 216(b) or Federal Rule of Civil Procedure 23.

avoid certain withholdings." (*Id.* ¶ 26.) Specifically, plaintiff asserts that defendants paid him "approximately $9.00 per hour for the first forty (40) hours he worked in a week by check, with the remaining balance of $11.00 per hour in cash, and $20.00 per hour for all hours worked over forty (40) in cash." (*Id.*) Plaintiff alleges that he "never received overtime pay at time and one-half of his regular rate of pay." (*Id.*)

Defendants answered plaintiff's complaint on June 5, 2017 (*see generally* Answer, ECF No. 8), and the parties subsequently engaged in settlement negotiations. (See Letter Requesting Adjournment of Deadlines, ECF No. 14.) On August 15, 2017, the parties informed the court that they had reached a settlement in principle. (*See* Letter Regarding Settlement, ECF No. 16.)

On September 14, 2017, plaintiff filed the approval motion, which attached the Settlement Agreement as an exhibit. In support of the approval motion, on September 15, 2017, plaintiff filed a letter supplementing the approval motion ("Supp." or the "supplement," ECF No. 19), which attached as an exhibit an invoice setting forth contemporaneous time and billing records from the law firm that represented plaintiff. ("Inv." or the "invoice," ECF No. 19-1.) The approval motion

asserts that plaintiff's "possible recovery is, at the very most, approximately $14,826.43 for alleged overtime violations and violations of the notice requirements of [the New York Labor Law]." (Mot. at 2.) The approval motion does not set forth the basis for this assertion.

The Settlement Agreement provides, in relevant part, that the parties will settle the action for a total sum of $19,000, of which $6,270 is payable to plaintiff's counsel. (Settlement Agreement § 1.) The remaining $12,730 is payable to plaintiff. (*Id.*) Both the approval motion and the supplement indicate that the amount payable to plaintiff's counsel represents attorneys' fees and expenses. (Mot. at 1; Supp. at 1.) Although neither the approval motion nor the supplement set forth a dollar amount specifically attributable to fees and a separate dollar amount attributable to expenses, the invoice indicates that plaintiff's counsel incurred expenses of $541.60, consisting of a $400 filing fee, a $140 fee for service of process, and $1.60 in PACER fees. (Inv. at 2-3.)

In addition to its monetary provisions, the Settlement Agreement includes a non-disparagement clause that prohibits plaintiff from making "comments that will disparage [defendants] or any of [their] past or present employees," which "may include comments concerning the working conditions at the [defendants]

4

or any other communications which might otherwise impair the reputation of [defendants]." (Settlement Agreement § 7.) The Settlement Agreement also states that "[n]othing contained herein is intended to limit [plaintiff's] communication rights under the FLSA." (*Id.*) The Settlement Agreement's release provision applies only to "wage and hour claims . . . based upon any conduct occurring up to and including the date of [p]laintiff's execution of th[e] [Settlement] Agreement," and expressly carves out "any claims arising out of alleged acts occurring after the effective date of th[e] [Settlement] Agreement." (Settlement Agreement § 3.)

On June 12, 2017, Judge Orenstein issued the Report and Recommendation in which he "conclude[d] that [the Settlement Agreement] is fair and reasonable," and recommended "that the court grant the motion and approve the settlement." (R&R.) The Report and Recommendation directed that any objections be made no later than October 4, 2017. (*Id.*) No objections were filed.

## Legal Standard

I. **Review of R&R**

A district judge may designate a magistrate judge to hear and determine issues arising before trial. 28 U.S.C. § 636. In reviewing a magistrate judge's report and recommendation, the district court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where no objection to a report and recommendation has been filed, the district court "need only satisfy itself that that there is no clear error on the face of the record." *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

**II.** *Cheeks* **Review**

Federal Rule of Civil Procedure ("Rule") 41, in relevant part, that:

> Subject to Rules 23(e), 23.1(c), 23.2, and 66 *and any applicable federal statute*, the plaintiff may dismiss an action without a court order by filing:
> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A) (emphasis added).

The FLSA is an "applicable federal statute" within the meaning of Rule 41. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Accordingly, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." *Id.* The parties must satisfy the court that their agreement is "fair and reasonable," *Wolinsky v. Scholastic*

6

*Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), and where, as here, a proposed settlement includes the payment of attorneys' fees, the court must consider the reasonableness of the fee award. *Id.* at 336 (citing 29 U.S.C. § 216(b) and collecting cases); *see also Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013).

In determining whether to approve a proposed FLSA settlement, relevant factors include "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky* 900 F. Supp. 2d at 335 (citations and internal quotation marks omitted).

Factors weighing against approval include "(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development

7

of the law either in general or in an industry or in a workplace." *Id.* at 336 (citation and internal quotation marks omitted). Courts have also expressed concern when presented with onerous confidentiality provisions and overly broad releases in FLSA settlement agreements. *See Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177-81 (S.D.N.Y. 2015) (discussing courts' treatment of such provisions and finding confidentiality provisions and releases at issue impermissible).

## **Discussion**

In reviewing the Report and Recommendation and the record in this case, the court considers that no party has objected to any of Judge Orenstein's recommendations.

### I. Fee Analysis

In reviewing the record, the court has undertaken a detailed analysis of the attorneys' fees requested in the approval motion. The court has also reviewed the invoice, and the supplement, which sets forth the relevant experience and qualifications of the attorneys (but not the paralegals) appearing in the invoice. (*See* Supp. at 1.)

As noted above and set forth in the Settlement Agreement and approval motion, plaintiff's counsel seeks an award of $6,720 in fees and expenses. (Mot. at 1; Supp. at 1; Settlement Agreement § 1.) Also as noted above, based on the

invoice, it appears that $541.60 of this amount is attributable to expenses, and the remainder is attributable to fees.

### A. Reasonableness of Fees Generally

In determining the reasonableness of a requested fee award, "there is a strong presumption that the 'lodestar' amount – that is, the number of attorney hours reasonably expended times a reasonable hourly rate – represents a reasonable fee," though "the court may adjust the fee upward or downward based on other considerations." *Wolinsky*, 900 F. Supp. 2d at 337-38 (collecting cases). Courts determine the reasonableness of an hourly rate on a number of factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Bogosian v. All Am. Concessions,* No. 06-CV-1633(RRM)(RML), 2012 WL 1821406, at *2 (E.D.N.Y. May 18, 2012) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 186 n.3 (2d Cir. 2008)).

Additionally, in an individual FLSA action (as opposed to a collective or class action) in which the parties settle the fee through negotiation, the "range of reasonableness" for attorneys' fees is greater than in a collective or class action, though courts must nevertheless carefully scrutinize the settlement, including to ensure that counsel's pecuniary interest "did not adversely affect the extent of relief counsel procured for the client[]." *Wolinsky*, 900 F. Supp. 2d at 336 (quoting *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08-CV-4377(KAM)(CLP), 2010 WL 2545439, at *5 (E.D.N.Y. May 17, 2010) and *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F.Supp. 110, 110-11 (S.D.N.Y. 1997)).

"In recent cases in this district, the court has found hourly rates ranging from $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants to be reasonable." *Cohetero v. Stone & Tile, Inc.*, No. 16-CV-4420(KAM)(SMG), 2018 WL 565717, at *4 (E.D.N.Y. Jan. 25, 2018) (citations omitted); *accord Hall v. Prosource Techs., LLC*, No. 14-CV-2502(SIL), 2016 WL 1555128, at *12-13 (E.D.N.Y. Apr. 11, 2016) (identifying a range of hourly rates prevailing in this district); *see also Ramos v. Nikodemo Operating Corp.* No. 16-CV-1052(KAM)(JO), slip op. at 21 (E.D.N.Y. Aug. 7, 2017) (ECF No. 42) ("Although the hourly billing rates ranging from $125 per

hour for paralegals to $450 per hour for senior partners are somewhat on the high end of fee awards in this district, both are within the range awarded in wage and hour cases in this district." (citing *Hall*, 2016 WL 1555128 at *12-13)); *Lopic v. Mookyodong Yoojung Nakjie, Inc.*, No. 16-CV-4179 (KAM) (CLP), slip op. at 32-33 (E.D.N.Y. Sept. 30, 2017) (ECF No. 13) (surveying cases and noting that hourly rates approved in cases in this district "have ranged from for $300 to $400 for partners, $200 to $300 for senior associates and $100 to $150 for junior associates." (citations omitted)).

**B. Reasonableness of Plaintiff's Counsel's Hourly Rate**

The court notes that counsel's efforts in this instant action solely on behalf of the plaintiff do not appear to have involved any novel or difficult legal questions, nor does this action's prosecution appear to require an unusually high level of skill. (*See* Compl. ¶¶ 29-60 (setting forth causes of action).) There is no indication that this action has precluded counsel from taking on other employment or that the nature of the action or the client imposed significant constraints on counsel. The invoice indicates that the attorney-client relationship began in April of 2017, counsel's representation of plaintiff effectively ended in September of 2017, and in the interim involved communication on an as-needed basis and did not

involve ongoing legal advice. (*See generally* Invoice.) Thus, applying the factors articulated in *Bogosian*, 2012 WL 1821406 at *2, and *Arbor Hill*, 522 F.3d at 186 n.3, the court concludes that the "reasonable hourly rate in this action should generally be within, and not at the top end of, the range of fees awarded in this district." *Cohetero*, 2018 WL 565717, at *4.

The timekeepers in the instant action, together with their position and requested hourly rate, are (i) Lloyd Ambinder, Esq., partner, $450; (ii) Michele Moreno, Esq., Esq., $225; (iii) Ines Cruz, paralegal, $100; (iv) Marta Nadgorska, paralegal, $100, (v) Christina Isnardi, paralegal, $100; and (vi) Michael Gavrilov, paralegal, $100. (Supp. at 1; Inv. at 3.)

Mr. Ambinder has over twenty years' experience litigating wage and hour class actions, including certain unspecified "high profile class actions." (Supp. at 1.) His requested hourly rate of $450 is "at the top range typically awarded to partners in this district," *Hall*, 2016 WL 1555128, at *12 (citations omitted). Although the result here is favorable, the court sees no basis to conclude that the instant individual settlement approaches the magnitude or complexity of the high profile class actions in which Mr. Ambinder has served as counsel. The court therefore finds that an hourly rate of $450

would be unreasonably high for Mr. Ambinder. The court will instead apply an hourly rate of $375 for his time, which, as discussed above, is on the higher end of hourly rates awarded to partners in this district but is more clearly within the range typically awarded.

Ms. Moreno is a 2015 law school graduate and has worked at her present firm since November of that year. (Supp. at 1.) Her requested hourly rate of $225 is excessive for someone with less than three years' experience as an attorney, as she is a midlevel associate and the fee range for senior associates, who have more experience, is $200 to $300, as discussed above. The court will apply an hourly rate of $200 for Ms. Moreno, which is the midpoint of the range of fees typically awarded for associates in this district. Neither the approval motion nor the supplement provide information regarding the experience or qualifications of Ms. Cruz, Ms. Nadgorska, Ms. Isnardi, or Mr. Gavrilov. As noted above, their requested hourly rate of $100 is on the high end of fees typically awarded for paralegals in this district, but nothing in the record suggests that a fee award in the high end is appropriate in this action. The court will therefore apply an hourly rate of $85 for these timekeepers.

**C. Reasonableness of Hours Billed**

"For purposes of determining a reasonable fee, the number of hours billed must also be reasonable, and courts should not award fees for 'hours that were excessive, redundant, or otherwise unnecessary to the litigation.'" *Cohetero*, 2018 WL 565717, at *6 (quoting *Hall*, 2016 WL 1555128, at *13); *accord Cho v. Koan Med Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007). Where hours billed are excessive, courts may "set[] forth item-by-item findings concerning . . . individual billing items," *Hall*, 2016 WL 1555128, at *13 (quoting *Lunday v. Cty. of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)), or may opt to "reduce an award by a specific percentage for duplicative, vague, or excessive billing entries." *Id.* (citing *In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 226, 237 (2d. Cir. 1987)).

Here, the invoice indicates that plaintiff's counsel spent 4.3 hours drafting the complaint[3] and 6.8 hours drafting Rule 26 initial disclosures. (*See* Inv. at 1.) As noted above, the instant action does not involve any novel or difficult legal questions. Accordingly, the court concludes that these hours

---

[3] This calculation does not take into account an entry indicating that a paralegal billed a block of 1.2 hours for "[r]eview[ing] [the] Complaint and ma[king] minor edits," as well as several unrelated tasks, including "legal research to . . . confirm DOS Service Addresses for . . . Defendants," drafting a summons and civil cover sheet, and "e-filing" documents. (Inv. at 2.)

14

are excessive, and will reduce the hours attributable to drafting the complaint and Rule 26 disclosures by five percent.

Applying this reduction results in a deduction of 0.555 hours, and because all of the hours at issue were billed at the rate of $200 per hour, the corresponding reduction to the lodestar amount is $111.

The court is satisfied that remaining hours billed are reasonable, and will not apply any reduction to those hours.

   D.   **Reasonableness of Fee Request**

Applying the aforementioned hourly rates, the court arrives at a lodestar amount of $6,838.50, determined as follows:

| TIMEKEEPER | RATE | HOURS | TOTAL |
|---|---|---|---|
| **AMBINDER** | $375 | 3.4 | $1,275.00 |
| **MORENO** | $200 | 26.8 | $5,360.00 |
| **CRUZ** | $85 | 0.2 | $17.00 |
| **NADGORSKA** | $85 | 1.1 | $93.50 |
| **ISNARDI** | $85 | 2.0 | $170.00 |
| **GAVRILOV** | $85 | 0.4 | $34.00 |
| | | Subtotal | $6,949.50 |
| | | Excess Hours Reduction | ($111) |
| | | **TOTAL** | **$6,838.50** |

The $6,270 amount requested here is below the lodestar amount of $6,838.50, and accordingly, the court concludes that plaintiff's counsel's fee request is reasonable.

15

**II. Expenses**

In FLSA actions, "[c]ourts typically allow counsel to recover their reasonable out-of-pocket expenses." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (quoting *Viafara v. Mciz Corp.*, No. 12-CV-7452 (RLE), 2014 WL 1777438 at *15 (S.D.N.Y. May 1, 2014)). Here, plaintiff's counsel has provided documentary support for claimed expenses in the form of an itemized list of expenses incurred and the date on which each expense was incurred. The court concludes that this support is sufficient. *See id.* at 316 (referring to ECF No. 155-4 in that action, an itemized list of expenses incurred by counsel in that action, in approving expense reimbursement in an FLSA action). Further, the requested expense reimbursement is reasonable.

**III. Remaining Considerations**

The court is in agreement with the remainder of Judge Orenstein's analysis. Plaintiff's ultimate recovery of $12,730 will be approximately eighty-six percent of $14,826.43, which represents the maximum recovery plaintiff's counsel estimates plaintiff could achieve through this action. (Mot. at 2.) This recovery is not unreasonable in light of the risks of litigation. Additionally, the Settlement Agreement appears to have been reached at arm's-length, and its releases are limited

to wage and hour claims arising before the parties executed the Settlement Agreement.  Finally, although the non-disparagement clause applies only to limit plaintiff's speech, it expressly carves out plaintiff's "communication rights under the FLSA" (Settlement Agreement § 7), which the court interprets to include plaintiff's ability to make truthful statements about his experience litigating this case.  *See Lopez*, 96 F. Supp. 3d at 180 n.65 ("[A non-disparagement clause] must include a carve-out for truthful statements about plaintiffs' experience litigating their case.  Otherwise, such a provision contravenes the remedial purposes of the [FLSA] and, in this context, is not 'fair and reasonable.'").

## **Conclusion**

For the reasons set forth above, the court adopts Judge Orenstein's Report and Recommendation and approves the settlement agreement.  The court will "so order" the executed stipulation of dismissal that the parties have filed with the approval motion.

**SO ORDERED.**

Dated:   June 17, 2018
         Brooklyn, New York

                                    _____/s/_____
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge